Third case is Covell v. Bell Sports. Mr. Thistle. Mr. Honor, Dan Thistle on behalf of the appellant Covell. At issue in this case is the duty— Do you wish to reserve any rebuttal time? Five minutes, Your Honor. Granted. At issue in this case is the duty of federal courts in a diversity case to apply the law of the state that the case arises from, in this case the Commonwealth of Pennsylvania, specifically a products liability action. Since 1971, when Pennsylvania adopted the second restatement of torts and web fees earned, Pennsylvania has consistently applied the second restatement to product liability actions in Pennsylvania. There has been no appellate decision, either by the Superior or Supreme Court, holding that anything other than the second restatement of torts should be applied. However, since 2009— Mr. Thistle. Mr. Thistle, you'll just excuse me. I have a different idea of what the issue is before us. We are not riding on a clean slate. We have the case of barrier. Now, isn't the real issue is, under the doctrine of stare decisis precedent, should we follow the barrier case? Or, if you feel that we should not follow it, what facts have developed since barrier that indicates that that is no longer a proper holding of this court? That's how I—I'm speaking for myself— that's how I see this issue. Yes, Your Honor. In barrier, as Your Honors are well aware, a Third Circuit panel, in trying to determine whether or not Pennsylvania would recognize a cause of action for a nonuser, went so far as to predict that Pennsylvania would, in the future, adopt the third—Section 1 and 2 of the third restatement of torts. And their reasoning about Section 1 was based on, also, on basically what they thought would happen to Section 2. Correct. So, you're not going to argue that the holding is dicta. I'm not sure I understand, Your Honor. Well, if they were only ruling on 1, you would probably be arguing it's dicta. But their reasoning about 1 was based on the status of 2. Correct. Which is what's before us. So, the reasoning underlying their statements about 1 was the issue that's before us. Okay. Yes, Your Honor. Okay. So, all right. I just want to get that straight. All right. It's—all right. All right. In barrier, the Court, knowledgeable of the fact that the Pennsylvania Supreme Court had decided to accept an appeal in Bogosh for that very reason, predicted that the Pennsylvania Supreme Court would, in fact, adopt Section 1 and 2 of the third restatement of torts. As Your Honors are aware, two months later, the Pennsylvania Supreme Court heard argument but decided that the appeal was improvidently granted and, therefore, did not adopt Section 1 and 2 of the third restatement. Since then, there have been 16 appellate decisions decided in Pennsylvania. Every one of those appellate decisions have applied the second restatement. But, more importantly, are— Are you talking about the Commonwealth Court and the Superior Court but not the Supreme Court? Well, also the Supreme Court, Your Honor, because just recently in the Schmidt case, a January 2011 case, Justice Saylor, who's the champion of the third restatement, went through a three-page discussion concerning the third restatement of torts and the current status of law in Pennsylvania. And I'm going to quote exactly what he said. Moreover, after a failed attempt, effort, to obtain certification from this Court to resolve at least some of the foundational concerns, the Third Circuit attempted to put them to rest by predicting that we would adopt the approach embodied in the restatement third of torts. Nonwithstanding the Third Circuit's prediction, however, the present status quo in Pennsylvania entails the continued application of Section 402A of the restatement second, subject to the admonition that there should be no further judicial expansion of its scope under current strict liability doctrine. So the Pennsylvania Supreme Court... Okay, but that wasn't the holding in that case. That wasn't the holding, Your Honor, but it was a direct statement with reference to the barrier case, which has created a situation where if you're trying a case in state court, you're trying under the second restatement, which is significantly different than the third. And the issue here is in which is better. But my case was filed in Pennsylvania Commonwealth Court, Common Pleas Court. It was removed. And was removed. And because of that, second restatement simply says focus on the product. If it's unsafe, it's our opinion that the manufacturer should be responsible. Third restatement says let's look at reasonableness for the manufacturer and goes into many other considerations that are irrelevant. Since you're not arguing that the holding of barrier doesn't apply, so you have to argue that something has changed that is legally significant. Yes, Your Honor. Okay, so my question are these improvidently granted, not getting to the issue, is that really anything that legally changes the basis of barrier? It is, Your Honor, because it's a prediction and barrier that Pennsylvania would adopt the third restatement. As I pointed out. Well, I'm convinced if the high court in Pennsylvania said, we're sticking with the second restatement, we would have clearly a different fact, and we'd have to do something about that. I'm just not sure that these around the edges things are enough to take barrier off the table. Well, Your Honor, I don't see how they could be clearer than saying, as Justice Saylor did, that nonwithstanding the Third Circuit's opinion, the present status quo in Pennsylvania is the second restatement. But that's only because Justice Saylor has not gotten enough votes for a petition for allowance of appeal to be granted. That's right. Reading the tea leaves, doesn't it appear that if and when that petition is granted, which I think this Court hopes is sooner rather than later, the trend appears to be going in Justice Saylor's direction. Isn't that what the opinion, there was one with Judge Justice Aiken, Justice Baird, Justice Newman, isn't that, you know? I recognize it's reading tea leaves, which is perilous, but we're required to do that, aren't we? Well, Your Honor, I disagree on that issue because in the Bogosh case, only one justice joined him saying that the appeal should not have been denied, and you only need three justices to have the appeal. Yes, but what we also have, and I'm speaking according to the Supreme Court, where we dismiss an appeal as improvidently granted, this Court's order has no precedential value. That's the Tilligman case in 1996. Your Honor, in addition to that, there's been another petition for allowance of appeal, which I made available to the Court, where it was the same basis that the third restatement should apply, that there's discordance between federal and state courts, and the Court denied that without comment. They've had opportunities to change it. Currently, there's, as was described in the one petition, chaos. It's an awful situation for litigants and lawyers. It is. I mean, it seems, though, to be, as chaotic as it is, there seems to be a logical explanation, namely, if any one of the three of us were sitting in a court of common pleas, we would be duty-bound to follow the Superior Court and Commonwealth Court precedents on the matter. But sitting here today in this capacity on this Court, we are duty-bound to follow the decisions of this Court, and the Court in barrier predicted, as best it could, not what the extant law was as articulated by the Superior or Commonwealth Courts, but rather what it supposed the Supreme Court would say about the law if it took the case. Your Honor, I'd like to point out that the Pennsylvania Supreme Court has stated, as Arella v. Black, Webb v. Cern, the law of the Commonwealth of Pennsylvania is the second restatement. Barrier was focusing on what it would do with a non-user. My case does not involve a non-user. All right, so that's what I wanted to hear from you. I mean, why barrier was a bystander liability case. Yes. So why is this different? Tell us what we know about state law decisions that render the fact that this is not a bystander case different. My client was a user. As such, the law of Pennsylvania is clear that his case would be tried under the second restatement. Didn't I start this by asking you if you were claiming that barrier was dicta with regard to this case? If you're saying now that your case is different because this is a user case, aren't you arguing that barrier is dicta? Your Honor, I don't believe so. I don't know what you're arguing then. Your Honor, I am arguing that under the Commonwealth of Pennsylvania, clearly the second restatement would apply to this case. We have right now a situation where there's – But we are not the Superior Court of Pennsylvania. We have to follow barrier. As Judge Aldiserk pointed out at the outset, I mean, stare decisis is a duty that we have to respect precedent. So you need to persuade us. We'll get you back up on rebuttal, but while your able adversary is arguing, I'd like you to think about what makes this case distinguishable from barrier because this argument isn't about what the Superior Court or Commonwealth Court of Pennsylvania might say or has said. It's about whether we need to follow barrier or not. Okay? Very well, Your Honor. Thank you. Mr. Toomey? Thank you, Your Honor. May it please the Court, Scott Toomey on behalf of the appellees, Bell Sports, Inc. and Performance, Inc. The position of the Covels in this case is not only a collateral attack on the substance of the precedent set out in barrier, but it's an attack on the rules of decision of this court. The precedent has meaning in this court, and it should not be eviscerated lightly. The Pennsylvania Supreme Court has had several opportunities to overturn barrier, to reject barrier, or to criticize barrier, but it's never done any of those things. It has never even commented negatively on the holding of barrier on its reasoning or on its rationale. I want to make three points, if I could, on the barrier issue. Number one is that it's correct and valid precedent. Number two is that no opinion since barrier from the Pennsylvania Supreme Court indicates that this court should second-guess the reasoning or the rationale of barrier to again change the law in this circuit. And number three, that there's nothing about this particular case that makes it the right vehicle to second-guess barrier, if the court was even so inclined to do that. First of all, barrier is correct and valid precedent. It is the policy of this circuit, as expressed in the Gruber case, that prior precedent should be overturned only where a compelling distinction exists or a compelling direction from the state courts is made. The gravity of this precedent is so substantial that the court has codified it. All right, but let me just interrupt you there, Mr. Toomey, because it strikes me you might be putting the cart before the horse. We know that we're controlled by barrier. Why does that case control this one when we consider the fact that that case involved a prediction of whether or not the Supreme Court of Pennsylvania would invoke bystander liability, whereas here the question presented, it seems to me, is whether the district court erred in allowing the defendant, your client, to introduce evidence regarding industry standards and instructed the jury on industry standards, despite the fact that the Pennsylvania court in Lewis had held that such instruction should not be given. Okay, I think you're talking about two issues, and I'll address them in sequence. The first is that barrier cannot be restricted to its facts. It is not simply a case where the sole issue was bystander liability, and that's because the fundamental foundational law in Pennsylvania would not allow for bystanders to recover under strict liability, so that Judge McKee and the panel on barrier had to examine what the Supreme Court of Pennsylvania would do if presented with the foundational issue. You can't get away from the foundational issue simply because the facts of barrier focused on bystander liability, and Judge McKee's analysis doesn't even try to do that. He goes to the foundation of the law. How do you define the foundational issue? Which would be the underlying concepts of 402A and Azarella as they pertain to intended use, unreasonably dangerous, and the basic instructions that are given to the jury at trial. And what Judge McKee then did was follow through the development of the law in Pennsylvania to show how the law departed from the basic fundamental premise it was adopted on, which was to provide recovery in cases where injury were caused by product. For example, where you have a bystander, an unintended user, under 402A as interpreted in Pennsylvania, there's no recovery. So for Judge McKee to get to the point where he could even consider bystander liability or liability for injuries to bystanders, he had to examine what would happen to the foundational precepts, and that's what he's done in barrier. So it's not dicta. He had to answer the question of whether the third restatement applies in Pennsylvania, would apply if the Supreme Court took the case? Absolutely. Absolutely. And that's why he spends so much time talking about the concurrences in Phillips, about the Department of General Services decision, the majority decision in that case, before even getting to the bystander liability issue. You had a second question you were going to answer, and I think that will lead to my next question. So answer, Judge. I believe the second part of the question you asked me was, how does this relate to the admission at trial of evidence regarding compliance with the Consumer Product Safety Commission safety standards? And the answer to that is that admission of that kind of evidence is inherent and is necessarily tied up with and allowed by the third restatement. It's in Comment D to Section 2, and it's also consistent with Pennsylvania law. It's consistent with Pennsylvania products law based in negligence, where conduct or reasonableness is a factor. Conduct and reasonableness are factors in a restatement third. Well, is there any reason to distinguish between industry standards and governmental standards? Because governmental standards are what came in here. Either you win on both, it seems to me, or you lose on both. Well, as you said, the issue in this particular case really was the Consumer Product Safety Commission standard. So I'm not sure you have to answer the broader question with regard to compliance with that standard. Well, it seemed to me the Court was pretty clear in Lewis about, quote, industry standards. And so my question was, well, they weren't very clear about governmental standards, but would governmental standards be any different? There has not been a Pennsylvania Supreme Court decision in a protective device  There are some Superior Court opinions on that. For purposes of this case, no, I don't think it makes a huge difference because both governmental safety standards and industry standards, while they're not dispositive, are relevant evidence to conduct, to reasonableness, and to the other aspects that are inherent to the restatement third. Okay, can we agree that the jury instruction and the admission of evidence really only work under the restatement third and not 402 as interpreted and limited by the previous cases? Actually, I would actually take an issue with that. Okay, so tell me how you sneak them in. I don't sneak them in at all. I bring them right in the front door. Okay, so tell me how. It's because this is a case about a protective device. It's a case in which the plaintiffs have alleged a failure to mitigate harm, not that the helmet caused the harm, but that it failed to mitigate the harm so that there is an enhanced injury. That kind of case falls under the crashworthiness doctrine under Section 402A in Pennsylvania. And under the crashworthiness doctrine, there is not a Pennsylvania Supreme Court case that has ruled the admission of compliance with standards is barred. So that is the argument, and that's why I bring it in. The crashworthiness line of cases is your way? Well, this is a crashworthiness case, yes, and that is how it comes in. That's number one. Number two is... Well, it wasn't charged as a crashworthiness case. Well, no, because of the crashworthiness doctrine, you asked me how would it come in if 402A were used. Okay. And that's the question I asked. All right, I see what you're doing. We obviously didn't ever reach that issue at the district court level because Judge Diamond correctly followed the precedent set out in barrier. Well, let's parse that a little bit. The district court relied on a footnote in barrier stating that the evidence of industry standards, quote, may be relevant to a strict liability theory. I believe he also relied on Comment D to Section 2 of the third restatement. True, but in any event, as I read the district court's opinion, that court was relying on our court's discussion in barrier regarding the introduction of evidence of industry standards. That's a footnote in our opinion. Are you familiar with the footnote that I'm... You're talking about the footnote in the barrier opinion, Your Honor? Yes. Off the top of my head, I am. But, I mean, I'm not trying to... Not a memory quiz. I'm not trying to quiz you. I'm trying to... Are you talking about footnote 7? Footnote 7? The best memory of all. Correct. Okay. I'm sorry, Your Honor, your question? It's a long one. Footnote 7, Judge Aldersert is quite right, unsurprisingly. I'm going to quote from that footnote. And this is at page 38 of the opinion in the Federal Reporter. We said, second, the, quote, industry standard, end quote, evidence, excluded in Lewis, was offered by the defendants as part of their defense to a strict liability claim. Lewis does not address whether industry standard evidence is inadmissible in a design defect claim based on a negligence theory, nor does it hold that the safety designs available at the time of My question to you is, why does that control here when we're not dealing with the plaintiff intending to offer in the evidence, but here we have a defendant offering the industry standard evidence? Two reasons. Number one, based on comment D to the third restatement, and based on the language of section 2 of the third restatement, you are talking about negligence-type concepts. You are talking about reasonableness. You are talking about conduct. So it's consistent with the footnote, number one. Number two, in this case, the plaintiffs injected compliance with the standards into the case. It was fundamental. No, they didn't want it. They came in kicking and screaming. I mean, that was probably, I thought, your most tendentious argument. That's like saying that you're criticizing a team for throwing passes all the time when the referee says they only get two downs instead of four. I mean, that wasn't their doing. They did everything they could to keep this evidence out. If that was what I argued, that was half the argument. The other half of the argument is that this case, from the beginning, before trial, relied on and had to inherently rely on the standards and compliance with standards. And I'll be specific. Dr. Pugh, in his report, and I believe it's at page 810 of the appellate record, uses 13.9 miles per hour as the injury threshold criteria for separating non-serious head injury from a serious head injury. That 13.9 mile per hour comes from the Consumer Product Safety Commission standard. The consumer product safety commission standard requires manufacturers to pass an impact test where the helmet with head form is dropped a certain distance so that the terminal velocity is 13.9 miles per hour and the force or the load on the head has to be less than 300 Gs. He used that as his injury threshold criteria, and that's the only basis for his injury threshold criteria. And then he conducted tests that showed another helmet, he believed, passed or surpassed that threshold. And therefore, if Mr. Covell had been wearing that helmet, he would have not sustained his severe head injury. I thought he agreed that your helmet met the standard. It just met it at a certain level. That's true. But where he used the standard and where he had to use it and why it's in this case is because he used it as his injury threshold criteria, the only basis for it, and the line at which he separated non-defective from defective helmets. In addition, the warnings that he required that he thought should have been there should have warned about 13.9 miles per hour. And, again, that only has relevance because of the Consumer Product Safety Commission standard and the fact that this helmet provides that. Well, but just because it's in his report doesn't mean it was going to be put before the jury. In fact, if they did put it before the jury, that would be diametrically opposed to their desire to keep out your testimony because that would be a classic case of opening the door. Even the Pennsylvania case law is clear on that, right? And what I'm saying is he could not have helped but open the door because 13.9 miles per hour, the impact speed, the line that he drew between defective and non-defective was inherent in the testing that he did and in the work that he did and the opinions that he reached long before trial. So even if the district judge erred in respect to following barrier, it was harmless error because it was inevitable to be part of the case. Is that your argument? Yes. Then 13.9 miles per hour is terminal velocity. It comes not from the industry standard. It comes from the law of physics. Isn't that right? Well, it comes from the Consumer Product Safety Commission standard, which is based on scientific tests. Right. Well, I've interrupted. Judge Rustani raised a question earlier, not of you, I think of your friend, about Sections 1 and 2, but I think we have to emphasize that in barrier, we said, we predict that if the Pennsylvania Supreme Court were confronted with this issue, it would adopt the restatement third of the torts, Sections 1 and 2. I just wanted to get that straightened up because I think the other person to whom that was directed did not agree, did not assume what I'm saying now. That's just throwing it out. Thank you, Mr. Toomey. Thank you, Your Honor. Rebuttal, Mr. Thistle. Yes, Your Honor. Thank you. First, I'd like to point out that in the barrier decision, the barrier court did, in fact, discuss that even under Section, the second restatement of torts when they're discussing the Webb v. Zern case, that there was a basis for establishing bystander liability. And that the basis of the decision, therefore, was bystander liability, which is not the issue in our case. But even if you assume that barrier is saying that the first and second section of the third restatement will be in federal court, the law and products liability cases, that did not specifically adopt Section 4. And Section 4 is the one that deals with industry standards, governmental regulations, which came into our case, which was the main objection in the case. And, in fact, even Justice Saylor, as he's pointed out in the Bogosh dissent, has said he doesn't know how Pennsylvania would react if confronted with adopting the third restatement and having to decide whether or not evidence of government regulations and industry standards should come in. So there is no prediction. Well, how could you keep them out if you changed the standard to reasonably safe or not reasonably unsafe? I mean, logically. Well, Your Honor, the question simply would be, was it reasonable under the circumstances? And to give it the added imprimatur of a government regulation takes it to another level. And Justice Saylor has indicated he wasn't willing to take it to that level. There is no prediction by any court that Pennsylvania would adopt Section 4 of the Restatement of Torts. Under Section 2, evidence of industry standards can come in, but only to show that an alternative design suggested by a plaintiff is not feasible. That was not the issue in this case. If Your Honors decide that industry standards should come in under Section 4, you would be making a further prediction that wasn't made in the barrier case so that at the very least it's our position that the case has to be retried without any reference to industry standards, government regulations, things of that nature. But in order to clarify the chaos that does actually exist for not only individuals, corporations, uniformity is required. And the court can't sit forever waiting for Pennsylvania. There's cases that we cite. You can't make a prediction and wait. We're now three years out, four, five, six, when the court is consistently denying petitions for allowance of appeal and in its comments while not a holding saying, despite barrier, the law of Pennsylvania is the second restatement. How do you address Mr. Toomey's argument that assuming, arguendo, you're correct about the district court's misapplication of barrier, why would it not be harmless error in light of the evidence that your client, that you marshaled for your expert's report? Well, Your Honor, as I pointed out in my brief, we were forced to introduce evidence of industry standards, and I said to the judge ahead of time, I'm not waiving this argument, but because of your ruling, I have to address it. Well, I know. He said it was without prejudice. He was clear. He made a good record on that to protect you. But as I understand Mr. Toomey's argument, your expert report in respect to the 13.9, et cetera, if that was your evidence, that part at least was coming in, was it not? He would have said, Your Honor, the case would have been retried in a totally different way. He would have testified that it's appropriate to test it at this speed, that the consumer should be told it's tested at this speed, and that it should be tested at that speed to the very edge. But why should it be tested at that speed? Because that is the speed that if a rider typically – if a rider is going to be hurt, they get hurt by typically falling down, and if you fall from six feet, you're going to be hitting the ground at around 13.9 miles per hour. So it's got a scientific basis. You don't need the government regulation or the industry standard. There's a scientific basis. There's an independent scientific basis rather than the imprimatur of the CSPC or any other industry. Correct. Now, counsel, I just – Bill said that evidence of compliance with the CPSC's safety standard for bicycle helmets was relevant and admissible pursuant to Section 2 of the Restatement of Thirds. Okay. Now, the relevancy provisions of the federal rules of evidence control in this diversity action. That's the Kelly case, 970, Fed 2nd, 1273. And I quote, the relevancy provisions of the federal rules of evidence are arguably procedurally and therefore govern in this diversity action notwithstanding Pennsylvania law to the contrary. Are you familiar with the Kelly case? I'm sorry, Your Honor, which case? Are you familiar with the Kelly case? Not offhand, Your Honor. All right. Well, I've just read it. And, Your Honor, my position is that the fourth restatement of the – the fourth section of the Third Restatement of Thirds, that is, has not been adopted by any court nor is any court – I'm answering your – I'm answering the question. Doesn't comment D to Section 2 admit this as relevant evidence? Okay. The point that I'm making is the rebuttal offered for your position that Section 4 controls and that it has not been adopted by us. And my comment is that Bell contends that it's a question of – it was relevancy and admissible pursuant to Section 2. Okay. And then when we talk about relevance, we go to the federal rules of evidence and the federal rules of evidence control and notwithstanding Pennsylvania law to the contrary. Well, Your Honor, the Section 2 limits the relevancy to whether or not there is a feasible alternative design. Absent that provision in Section 2, there would be no relevance. Let me go on to all of what Section 2 provides. Whether all possible care was exercised in the preparation and marketing of the product, whether a reasonable alternative design existed, and whether the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings. That's the whole ball of wax. Your Honor, it's our position that Section 4 was not adopted. That is the section that specifically deals with government regulations and with industry standards. Well, aren't regulations relevant? Aren't regulations relevant to Section 2? And I've just read it to you. You're saying they're not. Your Honor, from my reading of that section, it was relevant to the feasibility of alternative designs, which was not an issue in our case. And then there goes also that thing, whether all possible care was exercised in the preparation and marketing of the product. That's also Part 2. You're just insisting the reasonable alternative design. I don't want to push this any further, but I just wanted to, as we say, let the record speak for itself. Thank you, Your Honor. Anything further? Okay, thank you, Mr. Thistle. The case was very well briefed and argued. I particularly want to thank the amici, I thought, the briefs of the Pennsylvania Association for Justice and the Pennsylvania Defense Institute. If anybody's here representing those organizations, I thought those briefs were some of the finest I've read recently. So thank you to counsel and the amici. We'll take the matter under advisement.